Youssef H. Hammoud (SBN:321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: 949-301-9692
F: 949-301-9693
E: yh@lawhammoud.com

*Attorneys for Plaintiff,*
*Maicol Chacon*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAICOL CHACON, <br><br> Plaintiff, <br><br> v. <br><br> BARCLAYS BANK DELAWARE <br><br> Defendants. | Case No.: 5:24-cv-00583 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:** <br><br> 1. CCRAA, Cal. Civ. Code § 1785 *et seq.* <br> 2. RFDCPA, Cal. Civ. Code § 1788 et. seq, |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Maicol Chacon ("Plaintiff"), through his attorneys, allege the following against Defendant Barclays Bank Delaware ("Barclays" or "Defendant").

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based upon the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq.*, which regulates

1. credit reporting agencies and furnishers of information from reporting incomplete or inaccurate information on a consumer's credit report.

2. Count II of Plaintiff's Complaint is based upon the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et. seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices connection with the collection of consumer debts.

3. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

4. Jurisdiction of the court arises under 28 U.S.C. § 1332.

5. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

7. Defendant transacts business here; therefore, personal jurisdiction is established.

## PARTIES

8. Plaintiff is natural person residing in Lake Elsinore, California.

9. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1785.3(b).

COMPLAINT AND DEMAND FOR JURY TRIAL

10. Plaintiff is a "debtor" as defined by Cal. Civ. Code § 1788.2(h).

11. Defendant Barclays is a company that provides online banking and provides financial services, including savings account, credit cards, and other financial services to consumers. Defendant can be served through its registered agent for service of process, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

12. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

13. In or around September 2022, Plaintiff applied for and obtained a GAP credit card, which is issued by Defendant Barclays, while shopping at a GAP store (the "Account").

14. Plaintiff was informed that he was approved and that the credit card, cardmember agreement and all other information related to the Account would be sent to his home address.

15. When applying for the Account, Plaintiff provided his personal identifying information, including his name, his date of birth, his social security number, his home address, his phone number and his email address.

16. Plaintiff proceeded to place the purchase on the Account.

17. Thereafter, Plaintiff never received any communications from Barclays, either through the mail, email, or by phone.

18. Plaintiff never received the credit card associated with the Account.

19. Plaintiff never received a cardmember agreement associated with the Account.

20. Plaintiff never even received a phone call from Defendant Barclays.

21. Plaintiff was not contacted by anyone regarding the Account.

22. Plaintiff was confused, so he proceeded to contact Defendant to inquire about the Account and determine what was happening.

23. On or about December 27, 2022, Plaintiff spoke to a representative for Defendant.

24. During the call, Plaintiff was informed he owed an amount more than the original purchase price that occurred in or around September 2022.

25. Plaintiff was confused and surprised that he would owe more money than what was initially purchased in September 2022.

26. Plaintiff was further confused and surprised why Defendant had never sent him a statement or contacted him in any way.

27. Plaintiff informed Defendant that he wanted his Account to be closed and did not want to continue a relationship with them.

28. The representative for Defendant informed Plaintiff that if he paid the balance in full the Account could be closed.

29. Even though Plaintiff disputed he owed the amount alleged by Defendant, Plaintiff proceeded to pay the entire balance in full in an amount of approximately $61.24 with the understanding his Account would now be closed.

30. In or around April 2023, Plaintiff received a letter from Defendant.

31. The letter stated: "Enclosed please find a check in the amount $55.24, that we are refunding to you as a result of a credit balance on your Navyist Rewards Mastercard account."

32. Plaintiff did not deposit the check because of the bad experience he had with Defendant a few months prior.

33. As such, Plaintiff kept the check for his records without ever depositing it.

34. In or around August 2023, Plaintiff's wife began to receive email communications from Defendant Barclays regarding Plaintiff's account.

35. The email communications indicated that Plaintiff was past due on his account.

36. Throughout the month of August 2023, Plaintiff's wife received numerous emails from Defendant regarding Plaintiff's Account.

37. Plaintiff was unsure why Defendant was contacting his wife regarding his Account because he had never provided his wife's email address to Defendant.

38. Plaintiff was further confused as to why there was an alleged past due balance on his Account when he had paid and closed the Account in December 2022 and thereafter, he was sent a refund check that he never deposited for alleged overpayment on his Account.

39. Plaintiff also realized that Defendant began to furnish information to the credit reporting agencies, including Trans Union, Equifax and Experian, indicating that Plaintiff was past due on his Account.

40. In or around August 2023, Plaintiff proceeded to contact Defendant.

41. During the call, Defendant informed Plaintiff that the balance on the Account was $55.24.

42. Plaintiff informed the Defendant that he had paid and closed the Account in December 2022 and stated that he was sent a refund check in the amount of $55.24 that he never cashed or deposited.

43. Plaintiff spent a significant amount of time on the phone with Defendant regarding the issue surrounding the Account.

44. Defendant's representative was able to verify that Plaintiff did not deposit the refund check and further stated that the email regarding a past due balance was a mistake on Defendant's end.

45. Defendant's representative stated that in order to solve the problem, Plaintiff would need to deposit the refund check of $55.24, and then make a payment to Defendant in amount of $55.24.

46. Plaintiff informed the representative that this was a mistake caused by Defendant and that Defendant would need to correct it on its own because Plaintiff was not going to deposit the refund check and make a payment.

47. Plaintiff was also confused and surprised that Defendant would be asking Plaintiff such an unusual and uncommon request.

48. The Plaintiff further informed the Defendant's representative that the check was only valid for 90 days and it was no longer valid.

49. After further discussion, Defendant's representative indicated that Plaintiff did not need to deposit the check and make a payment, and instead, Defendant would solve the mistake on its end, including correcting the inaccurate information on Plaintiff's credit report.

50. Despite this conversation, Plaintiff's wife continued to receive emails from Defendant through January 2024.

51. The emails from Defendant indicated that the Account was past due and that there was a balanced owed, even though Plaintiff did not actually owe anything on the Account.

52. Further, Defendant continued to furnish inaccurate information to the three major credit reporting agencies on a monthly basis.

53. In or around January 2024, Plaintiff obtained a copy of his credit reports.

54. Plaintiff learned that Defendant Barclays furnished information to the credit reporting agencies indicating that he was past due between August 2023 and December 2024, with a balance of $296.00 and a past due amount of $202.

55. The inaccurate reporting by Defendant caused Plaintiff's credit score to significantly decrease.

56. The inaccurate reporting by Defendant caused significant harm to Plaintiff's credit worthiness.

57. Upon information and belief, Defendant furnished inaccurate information about the Account to each of the credit reporting agencies on a monthly basis.

58. Each and every time that Defendant furnished inaccurate information about the Account to a credit reporting agency is a separate and distinct violation of the CCRAA.

59. Between August 2023 and December 2023, Defendant committed approximately 15 violations of the CCRAA.

60. Defendant's inaccurate reporting caused Plaintiff's credit score to decrease and credit worthiness to suffer.

61. The inaccurate credit reporting has caused Plaintiff to suffer from emotional distress and mental pain and anguish, including but not limited to, stress, headaches, anxiety, embarrassment, sleepless nights, frustration, and confusion.

62. Defendant's conduct was malicious and/or oppressive.

63. Defendant had all the information it needed to furnish accurate information regarding Plaintiff's Account and failed to do so.

64. Defendant furnished information to the credit reporting agencies it knew or should have known was inaccurate.

65. Defendant also attempted to collect on an alleged debt related to the Account that Plaintiff did not owe.

66. As described above, Plaintiff paid and closed the Account in December 2022.

67. Thereafter, Plaintiff no longer had a balance associated with the Account.

68. In or around August 2023, Defendant attempted to collect on an alleged balance that did not exist.

69. The RFDCPA is a "state version" of the FDCPA that "mimics or incorporates by reference the FDCPA's requirements," including sections 1692d through 1692f, "and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012).

70. The RFDCPA is a strict liability statute. *Garcia v. Creditors Specialty Serv.,* No. 14-cv-01806-BLF, 2016 U.S. Dist. LEXIS 159686, at *15 (N.D. Cal. Nov. 2016).

71. Defendant attempted to collect from Plaintiff an amount that he did not owe.

72. Defendant misrepresented the character, amount, or legal status of the alleged debt associated with the Account.

73. In addition, the inaccurate reporting and unlawful collection actions by Defendant caused Plaintiff to suffer from emotional and mental pain and anguish, including but not limited to, sleepless nights, frustration, confusion, helplessness, fear, stress, and anxiety.

74. As a result of Defendant's conduct, Plaintiff has sustained and continues to sustain actual damages.

## COUNT I
**Defendant Barclays**
**(Violations of the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 *et seq.*)**

75. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

76. Defendant violated the CCRAA. Defendant's violations include, but are not limited to, the following:

  a. Defendant violated Cal. Civ. Code § 1785.25 by furnishing information on a specific transaction or experience to the credit reporting agencies that Defendant knew or should have known is incomplete or inaccurate.

  b. Defendant committed no less than 15 violations of the CCRAA.

  c. Defendant is liable to Plaintiff for up to $5,000 per violation, in addition to being liable for Plaintiff's actual damages and attorney's fees and costs.

77. Defendant's acts, as described above, were done willfully and knowingly.

78. As a result of the foregoing violations of the CCRAA, Defendant is liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

## COUNT II
### Defendant Barclays
**(Violations of RFDCPA, Cal. Civ. Code § 1788 *et seq.*)**

132. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

133. Defendant violated the RFDCPA. Defendant's violations include, but are not limited to, the following:

  a. Defendant violated Cal. Civ. Code § 1788.17 by collecting or attempting to collect a consumer debt without complying with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code (Fair Debt Collection Practices Act).

b. Defendant violated 15 U.S.C. § 1692d, by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection a debt.

c. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

d. Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt.

e. Defendant violated 15 U.S.C. § 1692e(10), by using false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

f. Defendant violated 15 U.S.C. § 1692f, by using unfair or unconscionable means to collect or attempt to collect any debt.

g. Defendant violated 15 U.S.C. § 1692f(1) by attempting to collect any amount (including any interest, fee, charge or expense incidental to the principal obligation) that is not permitted by law.

134. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

135. As a result of the foregoing violations of the RFDCPA, Defendant is liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Maicol Chacon respectfully requests that judgment be entered against Defendant Barclays Bank Delaware. for the following:

A. Declaratory judgment that Defendant violated the CCRAA;

B. Actual damages pursuant CCRAA, Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(a)(2)(A);

C. Punitive damages of $5,000.00 per violation pursuant to CCRAA, Cal. Civ. Code § 1785.31(a)(2)(B);

D. Costs and attorney's fees pursuant to CCRAA, Cal. Civ. Code § 1785.31(a)(1);

E. Declaratory judgment that Defendant violated the RFDCPA;

F. Statutory damages against Defendant of $1,000.00 pursuant to the RFDCPA, Cal. Civ. Code §1788.30(b);

G. Actual damages against Defendant pursuant to Cal. Civ. Code §1788.30(a);

H. Costs and reasonable attorneys' fees against Defendant pursuant to the RFDCPA, Cal. Civ. Code §1788.30(c);

I. Punitive damages to be determined at trial, for the sake of example and punishing defendants for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

J. Awarding Plaintiff any pre-judgment and post judgment interest as may be allowed under the law; and

K. Any other relief that this Court may deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED,

**HAMMOUD LAW, P.C.**

Dated: March 19, 2024

By: */s/ Youssef H. Hammoud*
Youssef H. Hammoud, (CA #321934)
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com
*Attorneys for Plaintiff,*
*Maicol Chacon*